UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | **CRIMINAL NO. H-17-676-4** |
| | § | |
| v. | § | |
| | § | |
| **JAVIER FLORES,** | § | |
| **Defendant.** | § | |

## PLEA AGREEMENT

The United States of America, by and through Ryan K. Patrick, United States Attorney for the Southern District of Texas, and Joe Porto and Heather Rae Winter, Assistant United States Attorneys, and the defendant, Javier Flores ("Defendant"), and Defendant's counsel, pursuant to Rule 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### Defendant's Agreement

1. Defendant agrees to plead guilty to Counts One, Five, and Six of the Indictment. Counts One and Five charge Defendant with Aiding and Abetting Aggravated Bank Robbery, in violation of Title 18, United States Code, Sections 2113(a), (d) and 2. Count Six charges Defendant with Aiding and Abetting Carry, Use and Brandishing of a Firearm in Furtherance of a Crime of Violence, in violation of Title 18, United States Code, Sections 924(c)(1)(A)(ii) and 2. Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment either charged in the indictment, or proved to a jury or proven beyond a reasonable doubt.

### Punishment Range

2. The **statutory** maximum penalty for each violation of Title 18, United States Code, Sections 2113(a), (d) and 2, is imprisonment of not more than 25 years and a fine of not more than

$250,000. Additionally, Defendant may receive a term of supervised release after imprisonment of up to 5 years. *See* Title 18, United States Code, sections 3559(a)(3) and 3583(b)(2). The **statutory** penalty for each violation of Title 18, United States Code, Sections 924(c)(1)(A)(ii) and 2, is imprisonment of not less than 7 years to life, to be served consecutive to any sentence pursuant to Counts One and Five, and a fine of not more than $250,000. Additionally, Defendant may receive a term of supervised release after imprisonment of up to 5 years. *See* Title 18, United States Code, sections 3559(a)(3) and 3583(b)(2). Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for the entire term of supervised release, without credit for time already served on the term of supervised release prior to such violation. *See* Title 18, United Stated Code, sections 3559(a)(3) and 3583(e)(3). Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

### Mandatory Special Assessment

3. Pursuant to Title 18, United States Code, section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

### Waiver of Appeal and Collateral Review

4. Defendant is aware that Title 28, United States Code, section 1291, and Title 18, United States Code, section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, section 2255, affords the right

to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, section 2255. In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

5. In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he may have received from his counsel, the United States or the Probation Office, is a prediction and not a promise, did not induce his guilty plea, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *See United States v. Booker*, 543 U.S. 220 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

6. Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

### Cooperation

7. The parties understand this agreement carries the potential for a motion for departure under Section 5K1.1 of the Sentencing Guidelines. Defendant understands and agrees that whether such a motion is filed will be determined solely by the United States through the United States Attorney for the Southern District of Texas. Should Defendant's cooperation, in the sole judgment and discretion of the United States, amount to "substantial assistance," the United States reserves the sole right to file a motion for departure pursuant to Section 5K1.1 of the United States Sentencing Guidelines. Defendant further agrees to persist in that plea through sentencing, fully cooperate with the United States, not oppose the forfeiture of assets contemplated in paragraph 19 of this agreement. Defendant understands and agrees that the United States will request that sentencing be deferred until that cooperation is complete.

8. Defendant understands and agrees that "fully cooperate," as that term is used herein, includes providing all information relating to any criminal activity known to Defendant, including but not limited to robberies and fraud. Defendant understands that such information includes both state and federal offenses arising therefrom. In that regard:

(a)  Defendant agrees that this plea agreement binds only the United States Attorney for the Southern District of Texas and Defendant; it does not bind any other United States Attorney or any other unit of the Department of Justice;

(b)  Defendant agrees to testify truthfully as a witness before a grand jury or in any other judicial or administrative proceeding when called upon to do so by the United States. Defendant further agrees to waive his Fifth Amendment privilege against self-incrimination for the purpose of this agreement;

(c)  Defendant agrees to voluntarily attend any interviews and conferences as the United States may request;

(d)  Defendant agrees to provide truthful, complete and accurate information and testimony and understands any false statements made by the defendant to the

4

Grand Jury or at any court proceeding (criminal or civil), or to a government agent or attorney, can and will be prosecuted under the appropriate perjury, false statement, or obstruction statutes;

(e) Defendant agrees to provide to the United States all documents in his possession or under his control relating to all areas of inquiry and investigation; and

(f) Should the recommended departure, if any, not meet Defendant's expectations, the Defendant understands that he remains bound by the terms of this agreement and cannot, for that reason alone, withdraw his plea.

### The United States' Agreements

9. The United States agrees to each of the following:

(a) If Defendant pleads guilty to Counts One, Five, and Six of the indictment and persists in that plea through sentencing, and if the Court accepts this plea agreement, the United States will move to dismiss any remaining counts of the indictment at the time of sentencing; and

(b) If the Court determines that Defendant qualifies for an adjustment under section 3E1.1(a) of the United States Sentencing Guidelines, and the offense level prior to operation of section 3E1.1(a) is 16 or greater, the United States will move under section 3E1.1(b) for an additional one-level reduction because Defendant timely notified authorities of his intent to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources more efficiently.

### Agreement Binding - Southern District of Texas Only

10. The United States Attorney's Office for the Southern District of Texas agrees that it will not further criminally prosecute Defendant in the Southern District of Texas for offenses arising from conduct charged in the indictment. This plea agreement binds only the United States Attorney's Office for the Southern District of Texas and Defendant. It does not bind any other United States Attorney's Office. The United States Attorney's Office for the Southern District of Texas will bring this plea agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices, if requested.

5

## United States' Non-Waiver of Appeal

11. The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right:

(a)     to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b)     to set forth or dispute sentencing factors or facts material to sentencing;

(c)     to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d)     to file a pleading relating to these issues, in accordance with section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, section 3553(a); and

(e)     to appeal the sentence imposed or the manner in which it was determined.

## Sentence Determination

12. Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, section 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offenses to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences

imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

### Rights at Trial

13. Defendant understands that by entering into this agreement, he surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

> (a) If Defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree;
>
> (b) At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and his attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court; and
>
> (c) At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if Defendant desired to do so, he could testify on his own behalf.

### Factual Basis for Guilty Plea

14. Defendant is pleading guilty because he is in fact guilty of the charges contained in Counts One, Five, and Six of the Indictment. If this case were to proceed to trial, the United States could prove each element of the offenses beyond a reasonable doubt. The following facts, among others, would be offered to establish Defendant's guilt:

On June 2, 2017, the Prosperity Bank, located at 7950 Westheimer, in Houston, Texas, was robbed at gunpoint by two black males at approximately 9:25am. Two black males, both with

7

firearms, and wearing masks and gloves entered the bank. The door was engaged with a manually activated lock so customers have to be buzzed in, but a bank employee stated she buzzed them in out of habit before looking up to see the robbers. They ordered all employees to the floor. The first suspect jumped the teller counter and ordered the teller to put all the money in a black zipper bag, while the other suspect paced around the lobby waving his gun. The bank employees complied with the robbers demands, fearing for their lives. The suspects then fled on foot, running northbound through the parking lot before jumping a fence and fleeing in a sedan. A witness observed a gray Honda Accord acting suspiciously in the Fedex parking lot before leaving, and the driver was wearing a hoodie. The total amount stolen was $40,645. At the time of the robbery, the Prosperity Bank was insured by the Federal Deposit Insurance Corporation.

Following a string of bank robberies and press coverage of surveillance videos, a tip was received that the robber shown in the surveillance footage was Perry Fluellen. In June 2017, FBI then engaged HPD's Criminal Apprehension Team in an effort to locate Fluellen and the gray Honda Accord that had been used in previous robberies. On June 20, 2017, Sgt. Kerry Richards and his team located the gray Honda Accord at the Alexan Ashford Apartments, located at 1200 Dairy Ashford and began surveilling its movements. On the night of June 20, 2017, members of the CAT team observed Perry Fluellen, and subjects later identified as Javier FLORES and Brandon Carter meet and converse for 30 minutes in the parking lot of 1200 Dairy Ashford before going their separate ways. Fluellen left in a red Nissan, bearing paper tag no. 68G0704.

At approximately 8:35am on June 21, 2017, officers observed Fluellen walking towards the gray Accord parked in the complex, carrying a pink bag. As the Accord pulled out of the apartment parking lot, it briefly pulled next to a Lincoln MKS. At this time, Brandon Carter

8

entered the driver side of the Accord. Then, the Accord, with Carter and Fluellen, and Lincoln MKS, with FLORES and the man later identified as Steve Malala pulled off together with the Accord following the Lincoln.

The vehicle left 1200 Dairy Ashford and drove to a nearby Exxon gas station where the driver of the gray Accord, Brandon Carter, met with the driver of a black Lincoln MKS, Javier FLORES, and exchanged something. The vehicles then drove down the Katy Freeway in tandem. The vehicles flanked a BBVA Compass Bank, located at 333 S. Fry Road, Katy, Texas. The Lincoln backed into a parking spot at McDonald's with a clear line of sight to the front doors of the bank. The Accord then pulled up to the bank and the passenger of the Accord then entered the bank masked and armed, robbing it. The suspect ran out of the bank getting back into the Accord and both the Lincoln and Accord left the area together.

In the bank, the employees stated that at 9:30am, a black male entered the bank, demanding everybody "get down!" The suspect had a black duffle bag, black handgun and pointed the gun at people in the bank, causing them to fear for their lives. The suspect jumped over the teller counter and stole from the teller drawers. He took a band of money containing a GPS tracker and bait bills. A list of bait bills taken by the robber was also provided to police. The total loss to the bank was $4,013. At the time of this robbery, the BBVA Compass Bank was insured by the Federal Deposit Insurance Corporation.

Following the robbery, officers pulled in behind the Accord at I-10 and S. Dairy Ashford. The vehicle exited I-10 and Fluellen threw out the money band with the tracker. This money was recovered by officers. The vehicle then pulled into a hotel parking lot and turned toward the Alexan Apartments. The Accord came to an abrupt stop in the parking lot and Carter and Fluellen

9

took off on foot. The suspects jumped the fence and were taken into custody within the apartment complex. On the route ran by Fluellen and Carter a pink bag and black zipper bag were recovered. Inside the black bag, officers found mixed bills of US currency, including bait bills stolen from the BBVA Compass bank, cash straps, sunglasses, marijuana, and a Firestar .40 caliber pistol loaded with .40 caliber ammunition. In the pink bag dropped by Fluellen, a Houston Texans hoodie, gloves, gray sweat paints and bandana were discovered. These items matches the clothing worn by the robbery suspect at the BBVA.

In a post-arrest statement, Fluellen admitted to his involvement in several robberies. He admitted that on June 2, 2017, FLORES chose the Prosperity Bank to rob, and Fluellen went in with Brandon Carter. He said he had a gun, but Carter did not. On June 21, Fluellen said that he drove out to Katy with Carter, and FLORES called Carter and said the BBVA looked like a good bank. Fluellen went in, and after the robbery, he threw the money with the tracker out. Carter was driving the getaway vehicle.

In a post-arrest statement, Malala stated that FLORES asked him to "watch his boys" and to watch the bank. They met up with the Accord at the Exxon gas station, and FLORES stayed on the phone with Carter and Fluellen on the way to the bank. FLORES was telling them what to do and told him "Go now, go now." Malala was going to be paid for being a look out.

Agents obtained cell phone records, putting FLORES and Carter's phones in the area of the Prosperity Bank at the time of the robbery on June 2, 2017. A call was connected from FLORES's phone to Carter's phone for over 30 minutes in the vicinity of the bank at 9:06 am, during the time of the robbery.

**Breach of Plea Agreement**

15. If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals, or disposes of assets in violation of this plea agreement, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

**Restitution, Forfeiture, and Fines – Generally**

16. This Plea Agreement is being entered into by the United States on the basis of Defendant's express representation that he will make a full and complete disclosure of all assets over which he exercises direct or indirect control, or in which he has any financial interest. Defendant agrees not to dispose of any assets or take any action that would effect a transfer of property in which he has an interest, unless Defendant obtains the prior written permission of the United States.

17. Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500 or similar form) within 14 days of signing this plea agreement. Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms permitting the United States to obtain tax information, bank account records, credit histories, and social security

11

information. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.

18. Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, stipulating to facts regarding the transfer of title and the basis for the forfeiture, and signing any other documents necessary to effectuate such transfer. Defendant also agrees to direct any banks which have custody of his assets to deliver all funds and records of such assets to the United States.

19. Defendant understands that forfeiture, restitution, and fines are separate components of sentencing and are separate obligations.

## Restitution

20. Defendant agrees to pay full restitution to the victims regardless of the counts of conviction. Defendant understands and agrees that the Court will determine the amount of restitution to fully compensate the victims. Defendant agrees that restitution imposed by the Court will be due and payable immediately and that Defendant will not attempt to avoid or delay payment. Subject to the provisions of this agreement, Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, the restitution order imposed by the Court.

## Fines

21. Defendant understands that under the Sentencing Guidelines the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release, if any. Defendant agrees that any fine imposed by the

Court will be due and payable immediately, and Defendant will not attempt to avoid or delay payment. Subject to the provisions of this agreement, Defendant waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

## Complete Agreement

22. This written plea agreement, consisting of 15 pages, including the attached addendum of Defendant and his attorney, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel. No promises or representations have been made by the United States except as set forth in writing in this plea agreement. Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

[INTENTIONALLY LEFT BLANK]

23. Any modification of this plea agreement must be in writing and signed by all parties.

Filed at Houston, Texas, on MARCH 26, 2019.

_____
Defendant

Subscribed and sworn to before me on March 26, 2019.

DAVID J. BRADLEY, Clerk
UNITED STATES DISTRICT CLERK

By: _____
Deputy United States District Clerk

APPROVED:

RYAN K. PATRICK
United States Attorney

By: _____        _____
HEATHER WINTER                                              Adrian Almaguer
Assistant United States Attorney                      Attorney for Defendant
Southern District of Texas

14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | CRIMINAL NO. H-17-676-4 |
| | § | |
| v. | § | |
| | § | |
| JAVIER FLORES, | § | |
| Defendant. | § | |

## PLEA AGREEMENT -- ADDENDUM

I have fully explained to Defendant his rights with respect to the pending indictment. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____    3-26-2019
Attorney for Defendant                           Date

I have consulted with my attorney and fully understand all my rights with respect to the indictment pending against me. My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms.

_____    3-26-2019
Defendant                                          Date

15