United States District Court
Southern District of Texas
**ENTERED**
October 05, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff-Respondent, | § | |
| | § | |
| V. | § | CRIMINAL ACTION NO. H-17-676-4 |
| | § | CIVIL ACTION NO. H-21-1214 |
| JAVIER FLORES, | § | |
| | § | |
| Defendant-Movant. | § | |

**MEMORANDUM AND RECOMMENDATION**

Before the Magistrate Judge in this federal habeas corpus proceeding pursuant to 28 U.S.C. § 2255 is Movant Javier Flores's § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No.197).[1] After reviewing Movant's § 2255 Motion, the Government's Answer, Movant's Response to the Government's Answer, the record of the proceedings before the District Court in the underlying criminal case, and the applicable case law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Movant Javier Flores's § 2255 Motion to Vacate, Set Aside, or Correct Sentence (Document No. 197) be DENIED.

**I.    Procedural History**

Movant Javier Flores ("Flores"), who is currently in the custody of the United States Bureau of Prisons, is seeking federal habeas corpus relief under 28 U.S.C. § 2255. This is Flores's first attempt at § 2255 relief. Flores raises a claim of ineffective assistance of counsel in light of the

---

[1] Javier Flores's Motion to Vacate, Set Aside or Correct Sentence can be found at Document No. 1 in Civil Action H-21-1214 and at Document No. 197 in Criminal Action No. H-17-674. References hereafter will be to the Criminal Document numbers unless otherwise indicated.

United States Supreme Court's decision in *United States v. Davis*, 139 S.Ct. 2319 (2019). He alleges that counsel was ineffective for failing to advise him not to plead guilty to violating § 924(c)

On November 15, 2017, Perry Fluellen, Brandon Rashard Carter, Steve Malala and Flores were charged in a six-count Indictment. (Document No. 1). Flores and his co-defendants were charged with three counts of aiding and abetting aggravated bank robbery, in violation of 18 U.S.C. §§ 2113(a)(d) and 2 (Counts 1, 3, & 5), and aiding and abetting carry, use, and brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2. (Counts 2, 4, & 6). Flores, pursuant to a written Plea Agreement, pleaded guilty to Counts 1, 5 and 6. (Document No. 83, Transcript of Rearraignment, Document No. 158). The written Plea Agreement is signed by Flores, and was thoroughly discussed at the Rearraignment. The signed written Plea Agreement makes clear that Flores "is pleading guilty because he is in fact guilty of the charges contained in Counts One, Five, and Six of the Indictment." (Document No. 83, ¶ 14), and contains an Addendum, also signed by Flores, that states that he "consulted with my attorney and fully understand all my rights with respect to the indictment pending against me. My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms." (Document No. 83, p. 15). The Plea Agreement includes a waiver of appeal and collateral review. (Document No. 83, ¶ 4). Additionally, the transcript of the Rearraignment confirms that Flores had discussed the agreement with his attorney and understood the terms of the plea agreement, the charges, the elements of the crimes, the rights he would give up if he pleaded guilty, the possible penalties, the sentencing process, and in particular, the

guidelines, and that he was pleading guilty because he was guilty. (Document No. 158, p.5-14 ).

The record further reflects that the Government summarized the facts it was prepared to prove if the case proceeded to trial. In response, Flores confirmed the accuracy of the summary and his role in the offense. The Prosecutor summarized the facts the Government was prepared to prove the guilt of Flores as follows:

> Your Honor, if the Government was called upon to prove the facts of this case, the Government would prove beyond a reasonable doubt each of the elements of Counts 1, 5, and 6; and they would be the following: that on June 2nd of 2017, the Prosperity Bank located at 7950 Westheimer in Houston, Texas, which is within the Southern District of Texas, was robbed at gunpoint by two black males at approximately 9:25 a.m.
>
> The two black males, both with firearms and wearing masks and gloves, entered the bank. The door was engaged with a manual activation lock. So, customers had to be buzzed in; but a bank employee said that she buzzed them in out of habit before looking at the robbers.
>
> The robbers ordered all employees to the floor. The first suspect jumped the teller counter and ordered the teller to put all the money in a black zipper bag while the other suspect paced around the lobby waving his gun. The bank employees complied with the robbers' demands fearing for their lives.
>
> The suspects then fled on foot running northbound through the parking lot before jumping a fence and fleecing in a sedan. A witness observed a gray Honda Accord acting suspiciously in the FedEx parking lot before leaving; and the driver was wearing a hoodie. This was close to the bank.
>
> The total amount stolen was $40,645; and at the time of the robbery, the Prosperity Bank was insured by the Federal Deposit Insurance Corporation.
>
> Following the string of bank robberies and press coverage of surveillance videos, a tip was received that the robber shown in the surveillance footage was a Perry Fluellen. In June of 2017, FBI agents then engaged the Houston Police Department's Criminal Apprehension Team in an effort to locate Mr. Fluellen and the gray Honda Accord that had been used in previous robberies.
>
> On June 20th of 2017, Sergeant Kerry Richards and his team located the gray Honda Accord at the Alexan Ashford Apartments located at 1200 Dairy Ashford and began surveillance of its movements.

On the night of June 20th of 2017, members of the CAT team observed Mr. Fluellen and the subjects later identified as Javier Flores, this Defendant in court today, and Brandon Carter meet and converse for about 30 minutes in the parking lot at 1200 Dairy Ashford Street before going their separate ways.

Fluellen left in a red Nissan bearing paper tag number 68G 0704; and at approximately 8:35 a.m. on June 21st of 2017, officers observed Mr. Fluellen walking towards the gray Honda parked in the complex carrying a pink bag. AS the Accord pulled out of the apartment parking lot, it briefly pulled next to a Lincoln MKS vehicle.

At this time, Brandon Carter entered the driver's side of the Accord. Then, the Accord, with Carter and fluellen, and the Lincoln MKS with Mr. Flores in court today, the man later identified also with them, Steve Malala, pulled off together with the Honda Accord following the Lincoln.

The vehicle left 1200 Dairy Ashford and drove to the nearby Exxon gas station where the driver of the gray Accord, Brandon Carter, met with the driver of the black MKS, Javier Flores, and exchanged something with their hands.

The vehicles then drove down the Katy Freeway in tandem. The vehicles flanked a BBVA Compass Bank located at 333 South Fry Road, Katy, Texas. The Lincoln backed into a parking spot at the McDonald's next door with a clear line of sight to the front doors of the bank.

The Accord then pulled up to the bank, and the passengers of the Accord entered the bank masked and armed with firearms and robbing it. The suspect ran out of the bank getting back into the Acord, and both the Lincoln and Accord left the area together.

In the bank, the employees stated that at 9:30 a.m. the black males entered the bank demanding that everybody get down and pointing their firearms at the individuals. The suspect had a black duffel bag, black handgun, and caused them to fear for their lives.

The suspect jumped over the teller counter and stole from the teller drawers. He took a band of money containing a GPS tracker and bait bills. A list of bait bills taken by the robber was also provided to the police. The total loss to this bank was $4,013.

At the time of this robbery, the BBVA Compass Bank was insured by the Federal Deposit Insurance Company–Corporation. Following the robbery, officers pulled in behind the Accord at I-10 and South Dairy Ashford. The vehicle exited I-10, and Mr. Fluellen threw out the money band with the tracker. This money was

recovered later by officers.

The vehicle then pulled into a hotel parking lot and turned towards the Alexan Apartments. The Accord came to an abrupt stop in the parking lot, and Carter and Fluellen took off on foot. The suspects jumped a fence and were taken into custody within the apartment complex.

On the route ran by Mr. Fluellen and Mr. Carter, a pink bag and a black zipper bag were recovered. Inside the black bag, they found mixed bills of US currency, including bait bills stolen from the BBVA Compass Bank; cash straps; sunglasses; marijuana; and a Firestar .40 caliber pistol loaded with .40 caliber ammunition. And the firearm would function as designed.

In the pink bag dropped by Fluellen, a Houston Texans' hoodie, gloves, gray sweatpants, and a bandanna were discovered. These items matched the clothing worn by the robbery suspect at the BBVA Bank.

In a post-arrest statement, Mr. Fluellen admitted to his involvement in several robberies. He admitted that on June 2, 2017, Mr. Flores, the Defendant in court today, chose the Prosperity Bank to rob; and Mr. Fluellen went in with Brandon Carter and robbed it. He said he [had] a gun but Carter did not.

But on June 21st, Mr. Fluellen said that he drove out to Katy with Mr. Carter and Mr. Flores and called Carter and said that the BBVA looked like a good bank. Mr. Fluellen went in. After the robbery, he threw the money with the tracker out; and Mr. Carter drove away in the getaway vehicle.

In a post-arrest statement, Mr. Malala stated that Mr. Flores asked him to watch his boys and to watch the bank; and they met up with the Honda Accord at the Exxon gas station; and Mr. Flores stayed on the phone with Mr. Carter and Fluellen all the way to the bank.

Mr. Flores was telling him what to do and then told him how to go now– go now to the bank. Mr. Malala was going to be paid for being a lookout at this time.

Agents obtained cell phone records putting Mr. Flores's and Carter's phones in the area of the Prosperity Bank at the time of the robbery on June 2nd of 2017. A call was connected from Mr. Flores's phone to Mr. Carter's phone for over 30 minutes in the vicinity of the bank at 9:06 am.m during the time of the robbery.

The Court: All right. Mr. Flores did you understand the factual summary that Mr. Porto has read?
The Defendant: Yes, sir, I do.

>The Court: Are those facts true?
>
>The Defendant: Yes, sir, they are.
>
>The Court: And is that why you're pleading guilty, because those facts are true?
>
>The Defendant: Yes, sir.
>
>The Court: Are you pleading guilty of your own free will?
>
>The Defendant: Yes, sir, I am.
>
>The Court: Are you pleading guilty because you are guilty?
>
>The Defendant: Yes, sir.
>
> *   *   *
>
>Mr. Porto: Yes, your Honor.  I would ask Mr. Flores if he is the same individual that planned and aided and abetted the robberies of the Prosperity Bank previously mentioned and of the BBVA Bank previously mentioned and the dates for each, that these institutions were Federal Deposit Insurance Corporation Institutions, and that they were located within the Southern District of Texas.
>
>The Defendant: Yes, sir.
>
>Mr. Porto: And do you also admit that each of those bank robberies were committed by individuals that you aided and abetted; namely, Perry Fluellen, Brandon Rashard Carter at the Prosperity Bank and Perry Fluellen, Brandon Rashard Carter, and Steve Malala at the BBVA Bank?
>
>The Defendant: Yes.
>
>Mr. Porto: And did you know that they carried firearms at the time of those bank robberies?
>
>The Defendant: Yes.
>
>Mr. Porto: And did you aid and abet them to carry those firearms to commit those robberies?
>
>The Defendant: Yes.

(Document No. 158, 14-21); (Plea Agreement, Document No. 83, ¶ 14).Prior to sentencing, a Pre-

Sentence Investigation Report ("PSR") was prepared. (Document Nos. 99, 100). Flores filed written objections to the PSR and argued for a downward departure. (Document No. 92).[2] Flores had a combined adjusted offense level of 32, which was reduced by three levels for acceptance of responsibility. With a total offense level of 29, and with a criminal history category of IV, Flores had an advisory guideline sentencing range of 121 to 151 months, and a mandatory consecutive term of imprisonment of 7 years.

On September 3, 2019, Flores was sentenced to 151 months as to Counts 1 and 5, to be followed by a consecutive sentence of 84 months, for a total term of 235 months, to be followed by a total three year term of supervised release. (Transcript of Sentencing, Document No. 165, p. 9-10). Judgment was entered on September 9, 2019. (Document No.134). Flores appealed to the Fifth Circuit United States Court of Appeals, arguing that his criminal history category had been miscalculated. The Fifth Circuit vacated Flores's sentence on June 22, 2020, and remanded for resentencing. (Document No. 175). He was sentenced on October 22, 2020, to a term of 120 months as to Counts 1 and 5, to be followed by a term of 84 months as to Count 6, for a total term of 204 months, to be followed by a total three year term of supervised release. An Amended Judgment was entered on November 19, 2020. (Document No. 184). On April 12, 2021, Flores filed the instant § 2255 motion. (Document No.197).

**II. Discussion**

Flores raises a claim of ineffective assistance of counsel. Flores argues that his counsel was ineffective for failing to advise him not to plead guilty to violating § 924(c) because aiding and

---

[2] The record shows that Flores objected to factual inaccuracies in the report such as his gang membership. Additionally, he objected to the enhancements.

7

abetting aggravated bank robbery is not a crime of violence, in light of *United States v. Davis*, 139 S.Ct. 2319 (2019), and as a result it cannot serve as a predicate for his § 924(c) conviction. According to Flores, he has been prejudiced by counsel's advice and is now serving a consecutive term of 84 months imprisonment for the Count 6 conviction. (Document No. 197, p. 14, 16-17, 19-22). The Government argues that Flores's ineffective assistance of counsel claim fails as a matter of law because Fifth Circuit precedent establishes that aiding and abetting an aggravated bank robbery is a crime of violence ("COV"), and *Davis* does not apply. (Document No. 212, p. 1, 4). The Magistrate Judge agrees.

Claims of ineffective assistance of counsel are generally measured by the standard of *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner must be able to show that his counsel was deficient and that the deficiency prejudiced him to the extent that a fair trial could not be had. *Id.* at 687. Deficiency is judged by an objective reasonableness standard, with great deference given to counsel and a presumption that the disputed conduct is reasonable. *Id*. at 687-88. The prejudice element requires a petitioner to prove that absent the disputed conduct of counsel, the outcome would have been both different and more favorable. *Id*. at 694-95. "The required objective standard of reasonableness is viewed "in light of the circumstances as they appeared at the time of the conduct" and is "measured by prevailing professional norms." *Murphy v. Davis*, 901 F.3d 578, 589 (5th Cir. 2018), *cert. denied,* 139 S.Ct. 1263 (2019) (quotation marks omitted). Under *Strickland*, a petitioner must establish both deficiency and prejudice prongs to be entitled to habeas relief. The failure to establish either deficient performance or prejudice makes it unnecessary to examine the other prong. *United States v. Seyfert,* 67 F.3d 544, 547 (5th Cir. 1995). "*Strickland* does not guarantee perfect representation, only a 'reasonably competent

attorney.'" *Harrington v. Richter*, 562 U.S. 86, 110 (2011)(quoting *Strickland*, 466 U.S. at 687)(other citations omitted).

In *Hill v. Lockhart*, 474 U.S. 52, 57 (1985), the Supreme Court held that the Sixth amendment right to counsel extends to the plea-bargaining process. The Supreme Court held that the *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Id.* at 58. With respect to the prejudice inquiry in the guilty plea context, the Supreme Court in *Hill* opined that a defendant must show "that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *Id.* at 162-63. During the 2017 term, the Supreme Court in *Lee v. United States*, ___U.S.___, 137 S.Ct. 1958, 1966 (2017), instructed that such a review should be "a case-by-case examination of the totality of the evidence" and to look at contemporaneous evidence. *Id*. at 1966. The Supreme Court wrote:

> "Surmounting *Strickland*'s high bar is never an easy task," *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010, and the strong societal interest in finality has "special force with respect to convictions based on guilty pleas." *United States v. Timmreck*, 441 U.S. 780, 784, 99 S.Ct. 2085, 60 L.Ed. 2d 634 (1979). Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences.

*Id.* at 1967.

"We will not find inadequate representation merely because, with the benefit of hindsight, we disagree with counsel's strategic choices." *Kitchens v. Johnson*, 190 F.3d 698, 701 (5th Cir. 1999) (quoting *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997)). "A defendant cannot make a case for ineffective assistance of counsel by making conclusory allegations that their counsel failed to file motions, make objections, or to follow the defendant's instructions." *Garcia v. United States*,

No. 4:18cv275 & 4:16CR126-002, 2019 WL 2610755, at *3 (E.D. Tex. May 10, 2019(citing *United States v. Demik*, 489 F.3d 644, 647 (5th Cir. 2007). Likewise, conclusory allegations of ineffective assistance of counsel do not raise a constitutional question in a federal habeas petition. *Miller v. Johnson,* 200 F.3d 274, 281 (5th Cir), *cert. denied*, 531 U.S. 849 (2000) (citing *Barnard v. Collins,* 958 F.2d 634, 642 (5th Cir. 1992); *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)). With respect to ineffective assistance of counsel claims, the Court in *Harrington v. Richter*, 562 U.S 86, 131 S.Ct. 770, 778 (2011) observed that "[t]here are, [ ] 'countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.' Rare are the situations in which the 'wide latitude counsel must have in making tactical decisions' will be limited to any one technique or approach." *Id.* at 788-89 (quoting from *Strickland*, 466 U.S. at 689). As a result, counsel's performance does not fall below that guaranteed by the Sixth Amendment where it can be shown that counsel formulated a strategy that was reasonable at the time and balanced limited resources with effective trial tactics and strategies. *Harrington*, 131 S.Ct. at 789. "Just as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Harrington*, 131 S.Ct. at 791. Moreover, "it is difficult to establish ineffective assistance when counsel's *overall* performance indicates active and capable advocacy." *Harrington*, 131 S. Ct. at 791 (emphasis added).

Flores relies on *United States v. Davis*, 139 S.Ct. 2319, 2324 (2019), in which the Supreme Court held that the residual clause contained in § 924(c) is unconstitutionally vague. *Cf Sessions v. Dimaya*, 138 S.Ct. 1204 (2018)(invalidating the residual clause of 18 U.S.C. § 16(b) as

10

unconstitutionally vague); *see also Johnson v. United States*, 135 S.Ct. 2551 (2015). 18 U.S.C. § 924(c) provides for "heightened criminal penalties for using or carrying a firearm 'during and in relation to' or possessing a firearm 'in furtherance of' any federal 'crime of violence or drug trafficking crme.'" *Id*. (quoting 18 U.S.C. § 924(c)(1)(A)). The statute has a two part definition of a crime of violence: subsection (A) or the elements clause and subsection (B) or the residual clause. A "crime of violence" ("COV") is defined as "an offense that is a felony and

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing that offense.

18 U.S.C. § 924(c)(3). In *Davis*, the Supreme Court held that the residual clause of the statute was unconstitutionally vague. *Id.* at 2336. Flores was convicted on two counts of aiding and abetting aggravated bank robbery, in violation of 18 U.S.C. § 2113(a) and (d), and one count of aiding and abetting carry, use, and brandishing of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) and 2. Flores argues that his conviction for aggravated bank robbery is based on the unconstitutional residual clause. However, under binding Fifth Circuit precedent aggravated Federal bank robbery constitutes a crime of violence under § 924(c). The Fifth Circuit United States Court of Appeals held in *United States v. Smith* that aggravated robbery is a crime of violence under § 924(c)(3)'s elements clause. *Smith*, 957 F.3d 590, 594 (5th Cir. 2020), *cert. denied*, 141 S.Ct. 828 (2020)(holding that aggravated [or armed] bank robbery in violation of 18 U.S.C. § 2113(a) and (d) is categorically a crime of violence under § 924(c)(3)(A));*United States v. Reece*, 938 F.3d 630, 637 (5th Cir. 2019)("Federal bank robbery constitutes a [crime of violence]" under § 924(c)(3)(A) "'because the least culpable conduct under that statute requires, at a minimum, an

11

implicit threat to use force.'")(quoting *United States v. Cadena*, 728 Fed. Appx. 381, 382 (5th Cir. 2018)) *cert. denied*, 139 S.Ct. 436 (2018); *United States v. Pervis,* 937 F.3d 546, 552 (5th Cir. 2019)*, cert. denied Gray v. United States*, 2021 WL 2519078 (U.S. June 21, 2021) *United States v. Hood*, No. CR H-99-259, 2020 WL 5539878, at *2 (S.D. Tex. Sept. 15, 2020)(holding that defendant's "§ 2255 motion is denied because his [armed bank robbery convictions] fall under § 924(c)(3)(A)'s definition of a crime of violence, which *Davis* did not invalidate"). "Aiding and abetting is not a separate offense; it is simply one means of committing the underlying crime." *Ortega-Lopez v. Barr,* 978 F.3d 680, 687 n.9 (9th Cir. 2020)(citation and internal quotation marks omitted). Given the Fifth Circuit's holding in *Smith*, that aggravated bank robbery is a crime of violence under the elements clause, not the residual clause, *Davis* has no effect on Flores's § 924(c) conviction, and counsel was not ineffective in advising him to plead guilty. As such, Flores cannot show that counsel's performance fell below that of *Strickland*. *See Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994)("Failure to raise meritless objections is not ineffective lawyering, it is the very opposite."); *United States v. Kimler*, 167 F.3d 989, 983 (5th Cir. 1999)("An attorney's failure to raise a meritless argument thus cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue."). His ineffectiveness of counsel claim fails as a matter of law and his § 2255 motion should be denied.

### III. Conclusion and Recommendation

Based on the foregoing, it is

RECOMMENDED that Movant Javier Flores's § 2255 motion (Document No.197) be DENIED.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within 14 days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), Fed.R.Civ.P. 72(b), and General Order 80-5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the fourteen day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429 (5th Cir. 1996). The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208.

Signed at Houston, Texas, this 5th day of Oct., 2021.

_____
Frances H. Stacy
United States Magistrate Judge